FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 13 2021

TAMMY H. DOWNS, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF ARKANSAS DELTA DIVISION

CRYSTAL FRENCH, AS ADMINISTRATRIX OF THE
ESTATE OF JONATHAN SELF, DECEASED,
ON BEHALF OF THE ESTATE AND THE WRONGFUL
DEATH BENEFICIARIES                                              PLAINTIFF

VS.                            Case No. 2:21-cv-134-DPM

DISPATCHER ANGELA TATUM, DEPUTY
CHRSSY TUCKER, DEPUTY "JOHN DOE,"
MONROE COUNTY SHERIFF MICHAEL
NEAL, THE COUNTY OF MONROE,
ARKANSAS                                                         DEFENDANTS

# COMPLAINT

Comes now the Plaintiff, Crystal French, Administratrix of the Estate of Jonathan Self, deceased, on behalf of the Estate and the wrongful death beneficiaries of Jonathan Self, (hereinafter referred to collectively as either "Estate" or "Plaintiff"), by and through her attorneys, the Etoch Law Firm, and for her Complaint against the Defendants, Dispatcher Angela Tatum (hereinafter "Dispatcher Tatum" or "Tatum"), Deputy Chrissy Tucker, (hereinafter "Deputy Tucker"), Deputy John Doe (hereinafter "Deputy Doe"), Monroe County Sheriff Michael Neal, (hereinafter "Sheriff Neal"), The County of Monroe, Arkansas, (hereinafter "Monroe County"), and states:

## PARTIES

1. Plaintiff, Crystal French, in a case numbered 48PR-21-22 and styled *In the Matter of the Estate of Jonathan Self, deceased,* pending in the Probate Court of Monroe

This case assigned to District Judge Marshall
and to Magistrate Judge Ray

County, Arkansas, is the duly appointed Administratrix of the Estate of Jonathan Self, deceased, and brings this action on behalf of the Estate of Jonathan Self, and the wrongful death beneficiaries of Jonathan Self. Jonathan Self was an unmarried adult, age 37, at the time of his death. Crystal French and Misty Stokes are Jonathan Self's sisters. Jonathan Self's parents were not living at the time of his death, and Jonathan Self had no children at the time of his death.

2. Defendant Dispatcher Tatum was at all times relevant hereto an employee of Monroe County and was an on-duty jail dispatcher during the time Jonathan Self was in the care and custody of Monroe County, Deputy Tatum, Deputy Doe, and Sheriff Neal.

3. Defendant Deputy Tatum was at all times relevant hereto an employee of Monroe County and was an on-duty deputy during the time Jonathan Self was in the care and custody of Dispatcher Tatum, Monroe County, Deputy Doe, and Sheriff Neal.

4. Defendant Sheriff Neal is the Sheriff of Monroe County, Arkansas, and at times herein was the supervisor and employer of Dispatcher Tatum, Deputy Tucker, and Deputy Doe and the custodian of all Monroe County inmates in the Monroe County jail, which included inmate Jonathan Self at the time of and the time preceding his untimely and wrongful death.

5. Defendant Monroe County is an entity of this State with the capacity to sue and be sued.

### JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over the claims against Deputy Doe 1, Deputy Doe 2, Sheriff Neal, and Monroe County, which, among other things, seek damages under 42 U.S.C. § 1983 for the deprivation of Jonathan Self's constitutional

rights as guaranteed by the Fourth, Eighth, and Fourteenth Amendments, pursuant to 28 U.S.C. § 1331. This claim is brought pursuant to this Court's jurisdiction over personal injury and wrongful death claims predicated on tort and negligence (Ark. Code Ann. §16-13-201), the Arkansas Survival of Actions Statute (Ark. Code Ann. §16-62-101) and the Arkansas Wrongful Death Act (Ark. Code Ann. §16-62-102). Plaintiff has suffered losses and damages within the jurisdictional amount of the Court.

7. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b), because Defendants operate within this district, and all named Defendants reside and/or do business herein and the substantial part of events giving rise to this Complaint occurred here.

## FACTUAL ALLEGATION

8. In or around 2017, Jonathan Self suffered a heart attack, underwent coronary artery bypass surgery and was given 2 stents.

9. Jonathan Self and Bubba Smith, the Sheriff's Chief Deputy of Monroe County, were first cousins. Chief Deputy Bubba Smith the Monroe County Sheriff's Department were well aware that Jonathan Self suffered severe medical conditions including heart issues.

10. On or about March 27, 2021, at approximately 9:30 p.m., Jonathan Self was arrested by Officer Holcomb and Corporal Haywood of the Brinkley Police Department. Jonathan Self was taken to the Brinkley Police Department, where he was ostensibly examined by paramedics.

11. On March 27, 2021, while at the Brinkley Police Department, Jonathan Self was combative with officers and refused to complete his inmate questionnaire. Given Jonathan Self's combative state, the paramedic's examination of Plaintiff was limited.

12. About three days later, on or about April 1, 2021, Jonathan Self was transported from the city jail in Brinkley to the Monroe County Jail in Clarendon, Arkansas.

13. Although Jonathan Self had not completed his inmate questionnaire while at the Brinkley Jail, Sheriff Neal, Dispatcher Tatum, Deputy Tucker, Deputy Doe, and all other agents and employees of the Monroe County Sheriff's Department knew of Plaintiff's 2017 heart attack, because Bubba Smith, Monroe County's Chief Deputy, was Plaintiff's first cousin and because Monroe County is a small rural area it was common knowledge in the community.

14. On April 4, 2021, at or around 5:30 p.m., Jonathan Self, while incarcerated in the Monroe County Jail, placed a request for medical care, complaining of runny nose and a cough that Jonathan Self described as "feels like my lungs are filling up with fluid." Later that day, Darrell Elkin, P.A., an independent contractor with the Monroe County Jail, spoke briefly with Jonathan Self, and wrote Jonathan Self a prescription for Azithromycin, Prednisone, and Albuterol.

15. On April 5, 2021, the Azithromycin, Prednisone, and Albuterol was administered by the Monroe County deputies or jailers to Jonathan Self.

16. On April 6, 2021, Jonathan Self, who had moved his mat from his cell to the common area of the cell block at some point prior to April 6, 2021, sat up and stated "Mike, I am dying, please help" while grabbing his chest to fellow inmate Michael

Claude Morgan. Michael Claude Morgan could tell that Plaintiff was suffering a heart attack, and he immediately began screaming for help and banging on the cell doors in an effort to get the attention of Dispatcher Tatum, Deputy Tucker, and Deputy Doe, so that they could help Jonathan Self and get others to help and render medical care to Jonathan Self.

17. In addition to Jonathan Self and Michael Claude Morgan, Chadwick Reed, and Randel Counts were also in Jonathan Self's cell block. When Michael Claude Morgan began screaming for help and banging on the door, Chadwick Reed and Randel Counts began waiving their hands and screaming for help, also in an effort to get the attention of Dispatcher Tatum.

18. The cell block in which Jonathan Self was housed did not have a panic button or intercom system, and Dispatcher Tatum was not allowed to physically enter the cell block of male inmates as she was a female.

19. At all times relevant hereto, Jonathan Self can be seen on video writhing in pain while holding his chest, and Michael Claude Morgan, Chadwick Reed, and Randel Counts can be seen waiving their hands, screaming, and banging on the door by the Deputies at the jail on the video monitors. Michael Claude Morgan, Chadwick Reed, and Randel Counts can also be seen walking in and out of the room in which Plaintiff was laying on the floor to check on Jonathan Self. From the video, even a lay person could appreciate that Jonathan Self was in serious need of medical help.

20. Several minutes after Michael Claude Morgan, and the others in the cell with Jonathan Self, began yelling for help, Dispatcher Tatum walked from the dispatch station to the closed door to the cell in which Jonathan Self was housed and asked what was

going on. Michael Claude Morgan told Dispatcher Tatum what was abundantly clear from the video—that Jonathan Self needed immediate medical attention.

21. Dispatcher Tatum walked back to the dispatch station and rather than immediately calling for an ambulance, placed a general information dispatch noting that "inmates in D Block adv J. Self has Passed Out."

22. After placing the above general information dispatch, Dispatcher Tatum was told to call the ambulance, which she did. Additionally, Dispatcher Tatum contacted Deputy Tucker and Deputy Doe and told them to come to the jail.

23. Deputy Tucker intentionally delayed in arriving at the Monroe County Jail, and even once he arrived, she did not render any medical aid to Jonathan Self.

24. Deputy Doe intentionally delayed in arriving at the Monroe County Jail, and even once he arrived, he did not render any medical aid to Jonathan Self.

25. Jonathan Self's medical condition continued to deteriorate as he waited for the paramedics to arrive. Once paramedics arrived, Jonathan Self was transported to Baptist Hospital in Stuttgart, then to Baptist Hospital in Little Rock.

26. Jonathan Self was taken off life support on April 7, 2021, and he died as a result of the denial of medical treatment from the Defendants and the lack of policies to treat the medical conditions of the inmates at the Monroe County Jail.

## COUNT I – DENIAL OF MEDICAL CARE BY DISPATCHER TATUM

27. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

28. Jonathan Self had a serious need for treatment of a heart attack, and Dispatcher Tatum was aware of Jonathan Self's serious need for treatment of a heart

6

attack because she was aware that Jonathan Self had heart disease and prior complicated heart health issues. Further Dispatcher Tatum observed Jonathan Self on video writhing in pain and holding his chest suffering from a heart attack while other inmates were banging on the jail doors and waiving their hands in an attempt to get help for Jonathan Self.

29. Dispatcher Tatum was aware of Jonathan Self's serious need for treatment of a heart attached, yet she intentionally failed to allow the Jonathan Self to obtain the medical care Jonathan Self so desperately needed by refusing to call the paramedics immediately upon observing Jonathan Self on video. Rather than immediately calling the paramedics upon observing Jonathan Self on video, Dispatcher Tatum waited several minutes to take any action and first walked to the cell door to confirm what she was seeing with her own eyes—Plaintiff suffering a heart attack.

30. Dispatcher Tatum further violated Jonathan Self's constitutional rights by allowing Jonathan Self to remain incarcerated under conditions posing a substantial risk of serious harm.

31. Specifically, Dispatcher Tatum had observed Jonathan Self lay in the floor in the common area of his cell for at least several hours and possibly even several days prior to his heart attack.

32. Further, Dispatcher Tatum knew that Jonathan Self had heart disease.

33. With these facts known to Dispatcher Tatum, she reasonably could infer, and in fact did infer, that there was a substantial risk that Jonathan Self would suffer a heart attack or other serious ailment, requiring immediate medical attention and possibly resulting in his death if he did not receive immediate medical treatment.

34. Despite inferring that Jonathan Self was likely to suffer a heart attack or other serious medical ailment, requiring immediate medical attention, Dispatcher Tatum intentionally failed to take any steps to ensure that an officer authorized to enter Jonathan Self's cell block (hereinafter "authorized officer") remain physically present at the Monroe County Jail during the time period that Jonathan Self was laying on the floor in the common area of the Monroe County Jail.

35. Dispatcher Tatum's intentional failure to take any steps to ensure that an authorized officer remain physically present at the Monroe County Jail exposed Jonathan Self to an objectively intolerable risk that he would suffer a heart attack or other serious medical ailment requiring immediate medical attention during a time period in which no one would be able to render medical aid or treatment to him or to physically remove him from his cell to a more easily accessible area of the jail so that he could more quickly receive medical care because female dispatchers are not allowed to enter the cell block of male inmates pursuant to the policies of Sheriff Neal and Monroe County.

36. As a result of Dispatcher Tatum's intentional failure to call the paramedic immediately upon observing Jonathan Self suffering from what was objectively clear to a lay person to be a heart attack, Jonathan was unable to get the medical attention he needed and ultimately died as a result of the heart attack.

37. As a result of Dispatcher Tatum's intentional failure to take any steps to ensure that an authorized officer was present at the Monroe County Jail during a time period in which she had inferred that Jonathan Self was likely to suffer a heart attack or other ailment requiring immediate medical attention, Jonathan Self was unable to get the medical attention he needed and ultimately died as a result of the heart attack.

38. All of Dispatcher Tatum's actions and inactions toward Plaintiff occurred while Dispatcher Tatum was acting under color of state law.

## COUNT II- DENIAL OF MEDICAL CARE BY DEPUTY TUCKER AND DEPUTY DOE

39. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

40. Upon learning that Jonathan Self was suffering a heart attack or other serious condition and in need of serious medical care, Deputy Tucker and Deputy Doe intentionally delayed in arriving at the Monroe County Jail. Even after arriving, Deputy Tucker and Deputy Doe intentionally refused to render any aid to Jonathan Self or to physically remove Jonathan Self from his cell to a more easily accessible area of the Jail so that Jonathan Self could be more quickly received by paramedics and transported to the hospital for further medical care.  Both Dispatcher Tatum, Deputy Tucker, and Deputy Doe intentionally declined to begin performing CPR prior to the arrival of paramedics.

41. As Deputy Tucker and Deputy Doe were aware that Jonathan Self had lost consciousness and suffered from heart disease, it was abundantly clear to even a lay person that Jonathan Self was in serious need of medical care and would need to be transported via ambulance from the Monroe County Jail to the hospital.

42. Deputy Tucker and Deputy Tucker knew that Jonathan Self would need to be transported from the Jail to the hospital.

43. Nevertheless, Deputy Tucker and Deputy Doe failed to take any action to render medical aid to Jonathan Self or to physically remove Jonathan Self from his cell to

a more accessible area of the Jail so that Jonathan Self could be more quickly received by paramedics and transported to the hospital for further medical care.

44. As a result of Deputy Tucker and Deputy Doe's intentional delay in arriving at the Monroe County Jail and their refusal to render any medical care to Jonathan Self or to physically remove Jonathan Self from his cell to a more accessible area of the Jail so that Jonathan Self could be more quickly received by paramedics and transported to the hospital, Jonathan Self's treatment was unnecessarily delayed, ultimately causing Jonathan Self to die as a result of his denial of necessary medical attention.

45. All of Deputy Tucker and Deputy Doe's actions and inactions towards Jonathan Self occurred while Deputy Tucker was acting under color of law.

### COUNT III – SUPERVISORY LIABILITY OF SHERIFF NEAL AND MONROE COUNTY

46. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

47. Defendants Sheriff Neal and Monroe County knew, or in the exercise of due diligence should have known that the wrongful conduct of Dispatcher Tatum, Deputy Tucker, Deputy Doe, and other deputies within Monroe County Sheriff's Department was likely to occur.

48. Sheriff Neal and Monroe County failed to instruct, supervise, control and/or discipline, on a continuing basis, Dispatcher Tatum, Deputy Tucker, and Deputy Doe, in the performance of their duties to refrain from:

    a.    Unlawfully delaying in contacting the paramedics upon observing an inmate suffering from a heart attack or other serious medical condition;

    b.    Unlawfully allowing inmates to remain incarcerated under conditions posing a substantial risk of serious harm to the inmates;

  c. Denying a detained individual immediate medical attention for physical injuries;

  d. Intentionally delaying in any responding to inmate requests for immediate medical attention;

  e. conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States; and,

  f. otherwise, depriving citizens of their constitutional and statutory rights, privileges and immunities.

49. Sheriff Neal and the Monroe County had knowledge of or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore, alleged, or other unlawful and unconstitutional acts were going to be committed. Sheriff Neal and Monroe County had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of inhabitants of Monroe County refused to do so.

50. Sheriff Neal and Monroe County, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Dispatcher Tatum, Deputy Tucker, and Deputy Doe, heretofore described.

51. All of the actions of Sheriff Neal and Monroe County described herein were under color of law.

## COUNT IV - CONSPIRACY BY ALL DEFENDANTS TO VIOLATE PLAINTIFF'S RIGHTS COGNIZABLE UNDER 42 U.S.C. §

52. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53. Each of the Defendants, acting in their individual capacities and under color of law, having conspired together and with others, reached a mutual understanding and

acted to undertake a course of conduct which violated Jonathan Self's personal and civil rights complained of herein, to wit:

(a) Defendants, each of them, agreed and acted recklessly, maliciously, deliberately indifferent, and intentionally to engage in conduct that amounted to a deliberate indifference of Jonathan Self's serious medical needs.

54. As a direct and proximate result of the conspiracy between Defendants, Jonathan Self has been deprived of his rights to be free from cruel and unusual punishment, to due process, which are secured rights under the United States Constitution and protected by the Federal Civil Rights Act and the violation of said rights resulted in the damages Plaintiff complains of herein.

## DAMAGES

55. At the time of the incident in question, Jonathan Self was survived by his siblings Crystal French and Misty Stokes. As a direct and proximate result of the aforementioned acts and omissions to act of the Defendants, Self received personal and fatal injuries and, as a consequence, his Estate and the statutory beneficiaries have sustained the following damages:

a. Loss of life;

b. Conscious pain and suffering;

c. Disfigurement;

d. Mental anguish;

e. Funeral expenses; and

f. Pecuniary injuries suffered by his siblings.

For all of which the Plaintiff herein, as Administratrix of the decedent's Estate, claims

damages in an amount in excess of $1,000,000.00, the exact amount unknown at this time.

56. As a direct and proximate result of the aforementioned acts and omissions to act of the Defendants, Jonathan Self's heirs suffered mental anguish occasioned by the traumatic and needless unexpected death of Self, all of which has damaged them in a sum in excess of $1,000,000.00 each.

57. Due to the Defendants' reckless, malicious, willful and wanton conduct, the Plaintiff is entitled to punitive damages in an amount in excess of $1,000,000.00, the exact amount unknown but to be determined at trial.

58. Plaintiff is entitled to her costs and a reasonable attorney's fee, which are allowed under the statutes of the United States of America, specifically, but not limited to, 42 U.S.C §1988

59. Plaintiff respectfully demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Crystal French, Administratrix of the Estate of Jonathan Self, deceased, on behalf of the Estate and the wrongful death beneficiaries of Jonathan Self, requests a Judgment against the Defendants for all compensatory and punitive damages as specified herein against each Defendant, jointly and severally; for attorney's fees and costs incurred in this action; for declaratory relief; and, for all other just and proper relief to which Plaintiff may be entitled in these premises.

Respectfully submitted,

LOUIS A. ETOCH, P.A.

By: *Louis Etoch*

Louis A. Etoch (89030)
Mr. Robert Lewis (2019189)
Mrs. Kayln Griffin (2021040)
Attorney for Plaintiff
727 Cherry Street
Helena, AR 72342
(870) 338-3591 phone
(870) 338-7201 fax